IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CONNIE SANTORA, | : | C.A. 09-513-RGA |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| RED CLAY CONSOLIDATED SCHOOL | : | |
| DISTRICT, ROBERT ANDZREJEWSKI, | : | |
| in both his official and personal capacities, | : | |
| DEBRA H. DAVENPORT, in both her official | : | |
| and personal capacities, HUGH BROOMALL, | : | |
| in both his official and personal capacities, and | : | |
| MERVIN B. DAUGHERTY, in his official | : | |
| capacity, | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM OPINION**

Gary W. Aber, Esq., Wilmington, Delaware; Attorney for Plaintiff Connie Santora.

Marc S. Casarino, Esq., Wilmington, Delaware; Attorney for Defendants Red Clay
Consolidated School District and Debra H. Davenport.

October 26, 2012
Wilmington, Delaware

1

**ANDREWS, United States District Judge:**

This is a motion for summary judgment. (D.I. 99). Plaintiff's remaining claims are for procedural due process violations and workers' compensation retaliation. The procedural due process claim is against Defendants Red Clay Consolidated School District and Debra Davenport. The workers' compensation retaliation claim is against Red Clay alone.[1] Defendants move for summary judgment on both of these claims.

## FACTUAL BACKGROUND

Plaintiff began her employment with Red Clay on November 10, 2003 as a secretary. (D.I. 1, ¶ 10). She filed two workers' compensation claims on March 19 and March 21, 2007, respectively. (D.I. 100, Exh. A at 1, 5). The first claim was for an injury Plaintiff suffered when she slammed her finger in the car door as she returned from her lunch break. (*Id.* at 1). The second claim was for carpal tunnel syndrome. (*Id.* at 5). Both of these claims had been denied by April 11, 2007. (*Id.* at 4, 6). Plaintiff filed a separate short term disability claim on April 5, 2007 and took leave under the Family Medical Leave Act ("FMLA") as of April 17, 2007. (*Id.* at 11, 12-14). Plaintiff received a letter on July 18, 2007 from Defendant Debra Davenport, Red Clay's human resources manager, informing Plaintiff that her disability request had been denied by Hartford, the disability insurance carrier, and that she was expected to return to work within five days. (D.I. 76-1 at B64). As it turned out, Hartford had not yet actually denied Plaintiff's claim at that time, although it was eventually denied on July 30, 2007. (D.I. 100, Exh. A at 16). Two days later, August 2, 2007, Plaintiff filed a petition with the Delaware Industrial Accident

---

[1] Defendants Robert Andzrejewski, Hugh Broomall, and Mervin B. Daugherty have already had judgments granted in their favor.

2

Board, apparently renewing her workers' compensation claims or appealing the denial.[2] (D.I.

101, Exh. B at 94).

On August 9, 2007, Plaintiff received a letter from Davenport informing her she was to

be terminated:

> Our records indicate that you have exhausted all accrued sick time and also all
> FMLA benefits to which you were entitled. Your Workers' Compensation claim
> has been denied, as has your request for short term disability with the State. You
> have appealed these decisions and they have been denied. At this point, your
> employment with the Red Clay Consolidated School District is being terminated
> effective August 15, 2007.

(D.I. 100, Exh. A at 17).   This letter misstated the status of Plaintiff's benefits requests.

Although both the disability and workers' compensation' requests had been initially denied,

Plaintiff had not yet appealed those decisions. (D.I. 101, Exh. C at 15).  Plaintiff nevertheless

resigned on August 15, 2007 to avoid a termination from appearing on her record. (D.I. 100,

Exh. A at 18). On October 25, 2007, Plaintiff appealed Hartford's denial of her disability claim.

(*Id.* at 19-20). On November 28, 2007, Hartford awarded Plaintiff disability benefits from May

4, 2007 through June 8, 2007. (*Id.* at 21).  Plaintiff appealed this decision to Delaware's Office

of Management and Budget ("OMB"), requesting a longer disability period, and Faith Rentz,

OMB's senior health care policy advisor, extended the disability period to be April 17, 2007

through June 19, 2007. (*Id.* at 22-24). Plaintiff's appeal of her workers' compensation claim

was later resolved via settlement, with Plaintiff and Red Clay agreeing that Plaintiff's disability

ended on September 7, 2007. (D.I. 101, Exh A at 99).

---

[2] The record is unclear as to the relationship of the August 2007 petition for workers' compensation and the denied
workers' compensation requests of March 2007. The August 2007 petition clearly involves the same injuries as the
March 2007 requests.

3

After these events, Plaintiff contacted OMB and requested return to work services under

29 Del. C. §5257. (D.I. 100, Exh. A at 25-26). Faith Rentz responded that Plaintiff was not

eligible for return to work services because her employment period ended prior to her being

awarded short term disability benefits and because she had taken another position with a state

entity. (*Id.* at 25-26). Plaintiff then brought suit, claiming that she was denied a constitutionally

recognizable property interest in her right to return to work and that she was retaliated against for

bringing a workers' compensation claim. (D.I. 1).

## DISCUSSION

Defendants move for summary judgment on these claims. The Court may grant a

motion for summary judgment only "where the pleadings, depositions, answers to

interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that

the moving party is entitled to judgment as a matter of law." *Azur v. Chase Bank, USA, Nat'l*

*Ass'n,* 601 F.3d 212, 216 (3d Cir. 2010).

The Court will first address the procedural due process claim against Red Clay brought

under 42 U.S.C. §1983. The Supreme Court has expressly rejected *respondeat superior* as a

means for holding local state government liable for constitutional violations perpetrated by its

employees. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691

(1978); *see also A.M. v. Luzerne Cnty. Juvenile Det. Ctr.,* 372 F.3d 572, 580 (3d Cir. 2004) ("A

governmental entity ... cannot be liable under a theory of *respondeat superior* or vicarious

liability"). The Supreme Court has attempted to "ensur[e] that a municipality is held liable only

for those deprivations resulting from the decisions of its duly constituted legislative body or of

those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty.*

4

*Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997). Thus, Plaintiff can only succeed on her due process claim if she demonstrates that Red Clay maintained a policy that caused her constitutional deprivation. *Thomas v. Board of Educ. of Brandywine School Dist.*, 759 F. Supp. 2d 477, 489 (D. Del. 2010).

Plaintiff thus must provide evidence that (1) a policy or custom of the local government entity caused the constitutional deprivation and that (2) the entity was at least deliberately indifferent to the harm the policy caused. *See id.* Plaintiff argues that the single act of denying her return to work services may satisfy the "policy or custom" requirement, so long as the act was committed or ratified by policy-making officials. The Third Circuit has stated that a single decision may suffice as a "policy or custom" only where the causal link between the policy-making official's conduct and the constitutional harm is clear. *See Downton v. Phone*, 441 F. App'x 91, 92 (3d Cir. 2011). For example, if the policy maker himself "specifically authorizes or directs the deprivation," the requirement is satisfied. [3] *Id.*

Section 5257 of Title 29 of the Delaware code requires reemployment of an employee coming off disability into a vacant position for which she qualifies. Plaintiff argues that the acts of Red Clay's "entire district administration" deprived her of this constitutional property right. (D.I. 101, p. 8). This includes the acts of Superintendent Andzrejewski, Deputy Superintendent Diane Dunmon, Defendant Davenport, Hugh Broomall as a human resources manager, Susan Carpenter as a human resources subordinate, and Joe Floore as the Director of Finance. This theory fails to recognize that only the actions of a policy-maker, i.e., someone with unreviewable and final discretion to act, can give rise to Red Clay's §1983 liability. The only person who

---

[3] A policy-maker is defined as an official having final, unreviewable discretion to make a decision or take action. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1481 (3d Cir.1990).

5

meets this criterion is District Superintendent Andrzejewski, as all of the other actors were his subordinates. Plaintiff thus must show that the Superintendent specifically authorized or directed the denial of her reemployment with Red Clay. This she cannot do. First, the evidence shows that the final decision to deny Plaintiff return to work services was entrusted to OMB, not the Superintendent. Faith Rentz of OMB penned the May 30, 2008 letter informing Plaintiff of the denial of her request for reemployment, stating the following:

> Your employment with the Red Clay School District ended prior to approval of your Short Term Disability and you were not approved for Long Term Disability; therefore, under Delaware Code, you are ineligible for Return to Work services. In addition, it is our understanding that you have since obtained employment with another State of Delaware entity, the University of Delaware, in a similar position as a Senior Secretary. This employment negates the need for Return to Work services.

(D.I. 100, Exh. A at 26). Rentz further testified that she was not aware of any Red Clay influence on the decision to deny Plaintiff reemployment. (*Id.* at 52). Plaintiff attempts to dispute this fact by citing a series of letters. All of these letters, however, were written subsequent to Rentz's denial of Plaintiff's request, and they do nothing to change the fact that final authority to make the determination rested with OMB, not the Superintendent. The first letter was from Rentz and dated June 13, 2008. (D.I. 101, Exh. B at 72-73). This letter was initially addressed to Jill Floore, the Director of Finance at Red Clay, and was eventually forwarded by e-mail dated July 7, 2008, to the Superintendent and Hugh Broomall. (*Id.*; D.I. 101, Exh. C at 19). It noted that Plaintiff successfully appealed the denial of her short term disability request and had requested return to work services. (D.I. 101, Exh. B at 72). It further stated, "[Plaintiff's] request for return to work assistance and reinstatement into her former position do not fall clearly within the parameters of the return to work statute, 29 Del. C. §5257(a)(2)." (*Id.*). The letter then recognized that had Plaintiff's disability request been timely approved, she would have been

6

returned to her secretary position after coming off disability and not been terminated. (*Id.* at 73). The letter then requested that Plaintiff either be returned to her position as a secretary if such a position was available, or that she be placed in a similar vacant position for which she qualified pursuant to §5257(a)(2). (*Id.*).

The response to Rentz's letter was penned not by the Superintendent himself, but by Deputy Superintendent Dunmon. (*Id.* at 61). Dated July 9, 2008, this letter detailed three reasons why Red Clay could not reemploy Plaintiff. (*Id.*). The first reason was that the Plaintiff had voluntarily resigned. (*Id.*). The second reason was that Plaintiff had accepted another position with the University of Delaware, indicating that she had chosen to move on to another job. (*Id.*). The third reason was that Red Clay had no openings comparable to those that Plaintiff previously worked as the school district was reducing its workforce through attrition. (*Id.*).

The final letter cited by the Plaintiff is dated August 2, 2008 and is addressed directly to the Superintendent. (D.I. 101, Exh. B at 88-89). In this letter, Plaintiff explained that she received a termination letter based on the erroneous premise that her workers' compensation and disability claim appeals were exhausted. (*Id.* at 88). The letter further stated that Mr. Broomall had informed her that she would be receiving a list of available positions, but that the list never arrived. (*Id.* at 88). The letter concluded with a request for a position comparable to the one she held before her stint on short term disability in accordance with Delaware law. (*Id.* at 89).

Plaintiff argues that these letters prove that the Superintendent knowingly ratified the denial of her right to reemployment. Plaintiff is wrong. None of these letters show that the Superintendent "specifically authorize[d] or direct[ed] the deprivation." *Downton*, 441 F. App'x

7

at 92. The initial decision to deny reemployment was made by Rentz of OMB. Rentz then apparently reached out to the Superintendent's office for further information regarding possible vacancies suitable for the Plaintiff, and she was rebuffed by the Deputy Superintendent. There is no evidence, however, that the Superintendent personally had any input in regard to Plaintiff's situation. The fact that a letter is mailed to a high level government official does not provide a basis for concluding that subsequent governmental decisions relating to the subject of the letter are specifically authorized or directed by the official. The response to Rentz was authored by the Deputy Superintendent, and there is no evidence that the source of the message was the Superintendent himself and that the Deputy acted as mere conduit for the Superintendent's judgment. Finally, there is likewise no evidence that Plaintiff's August 2, 2008 letter ever actually reached the Superintendent,[4] nor is there evidence that the Superintendent ratified any action after that date. The Plaintiff's failure to show that the Superintendent had personal input into the decision to deny her reemployment is fatal to her argument that his "policy or custom" caused that decision. Moreover, the final decision to deny reemployment rested with OMB, even if Rentz did request information from the Superintendent's office as to the application of the return to work statute to Santora's case.

Further, even had Plaintiff shown that the Superintendent personally denied Plaintiff's request for reemployment, there is no evidence that this was done with deliberate indifference to a constitutional harm. Deliberate indifference is generally defined as knowledge of a serious risk of harm. *See Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000). It requires more than simple negligence. *Banegas v. Hampton*, 2009 WL 1098845, *4 (E.D. Pa. 2009). It may

---

[4] Discovery is, or should be, complete, as the trial in this case is scheduled for November 2012. In a small organization, there might be an inference that a letter addressed to the head of the organization reached that person, but the larger the organization, the less likely that inference is to be valid. When discovery is complete, and there is no evidence to support a fact of which the plaintiff has the burden of proof, the plaintiff has not created a genuine issue of material fact.

even be that the Plaintiff must present "scienter-like" evidence of the Superintendent's indifference to a constitutional deprivation. *See Simmons v. City of Philadelphia*, 947 F.2d 1042, 1063 (3d Cir. 1991) (Opinion of Becker, J.). Plaintiff argues that the statute mandates that Red Clay offer her reemployment, but the Deputy Superintendent indicated that there were no suitable vacant positions available. The return to work statute does not state the employer is required to create a position for an employee where none exists, and Plaintiff has put forth no evidence that qualifying vacant positions in fact existed. Thus, any decision to deny reemployment to Plaintiff was based on a reasonable consideration and not suggestive of a knowable risk of a constitutional deprivation. For all these reasons, Defendant's motion for summary judgment on the §1983 procedural due process claim as to Red Clay is granted.

Defendants also moves for summary judgment on Plaintiff's claim against Defendant Davenport in her official capacity. As a matter of law, a plaintiff may not bring a §1983 claim against a state official in her official capacity. *See Blizzard v. Commander, Del. State Police Troop Nine*, 725 F. Supp. 2d 469, 472-73 (D. Del. 2010). Thus, to the extent that Plaintiff's §1983 claim against Davenport relies on her official capacity, Defendant's motion for summary judgment is granted.

Defendant also moves for summary judgment on Plaintiff's claim against Davenport in her personal capacity. A §1983 suit against a state government official in her personal capacity is allowable so long as the plaintiff shows that the official had personal involvement in the alleged wrongdoing. *Id.* at 473. The official must have at least acted with gross negligence in depriving the Plaintiff's property right; ordinary negligence is not sufficient. *Wooleyhan v. Cape Henlopen School Dist.*, 2011 WL 2970794, *2-3 (D. Del. 2011). Plaintiff argues that Davenport's actions wrongfully deprived her of return to work services. This is arguably due to

9

Davenport's intentionally false statement that Plaintiff's disability appeals were exhausted. According to Plaintiff, she would have never lost her job had Davenport accurately accounted for the still pending nature of her disability request. Plaintiff also argues that Davenport intentionally misled OMB as to the involuntary nature of her resignation. It is true that the termination letter incorrectly stated that Plaintiff's disability appeal had been denied. The only evidence on this matter, however, suggests that Davenport relied on others for disability request statuses. Davenport testified that she typically relied on Sue Carpenter, a benefits specialist in the Red Clay Human Resources Office, for this information. (D.I. 100, Exh. A at 39). Plaintiff points to the fact that Carpenter does not recall providing this information to Davenport, but that does not negate Davenport's testimony that her standard practice was to rely on Carpenter.[5] (D.I. 101, Exh. C at 45-46). This undermines the argument that Davenport was grossly negligent in drafting the termination letter. There may have been some sort of communication breakdown (or other error) implying simple negligence, but there is no evidence of any facts suggesting greater culpability.

Further, the termination letter was written in August 2007, and Plaintiff is suing Davenport for a May 30, 2008 decision made by Faith Rentz of OMB. If Plaintiff was merely arguing that the initial termination of her employment caused the constitutional deprivation, establishing liability on the part of Davenport would be a simpler task. Instead, Plaintiff faces the difficulty of linking Davenport's termination letter with a decision made by Rentz. Plaintiff insists that Davenport's termination letter was the first domino in the series of events that caused OMB to deny Plaintiff reemployment. To bridge these two events, Plaintiff points to evidence that on May 23, 2008 Davenport incorrectly told OMB that Red Clay was "shocked" to learn that

---

[5] The record shows that on July 11, 2007, Carpenter was notified that the "short-term disability claim" had been denied, but that the Plaintiff had the right to appeal. (D.I. 101, Exh. B at 46).

10

Plaintiff intended to resign and that no discussion about the status of Plaintiff's leave leading up to the resignation took place, thus implying that the resignation was completely voluntary. (D.I. 101, Exh. B at 77). The Court agrees that these statements could be interpreted as being false,[6] as the termination letter authored by Davenport eight months earlier clearly referenced Plaintiff's exhaustion of leave and disability appeals. Plaintiff argues that Davenport's falsehood perpetrated the misconception that her separation from work was voluntary and thus jeopardized her ability to obtain return to work services. There is no evidence, however, that Davenport's statement had any effect on OMB's decision to deny her reemployment. To the contrary, the OMB letter to the Superintendent and other Red Clay officials stated, "We understand that Ms. Santora submitted a voluntary written resignation on August 15, 2007, after receiving a termination letter from Red Clay Consolidated School District[.]" (D.I. 100, Exh. A at 27). Thus, OMB understood that Plaintiff only resigned after being confronted with the prospect of termination. Moreover, Faith Rentz testified that she was not aware of any influence that any employee of Red Clay had on the decision to deny Plaintiff reemployment. (*Id.* at 52). Therefore, Davenport's misstatement cannot be said to have caused the misleading effects that Plaintiff argues. In addition, the voluntariness of the end of Plaintiff's employment with Red Clay were not determinative as to OMB's decision to deny Plaintiff return to work services, as the OMB letter stated that she was being refused reemployment because she had taken employment with a different state agency and because her employment ended prior to her award of disability benefits. Whether OMB believed that Plaintiff resigned or was terminated was thus

---

[6] The Court must view the evidence in the light most favorable to the Plaintiff for purposes of summary judgment. The materials provided include an e-mail from Leslie Ramsey purporting to state what Ms. Davenport said. Ms. Davenport is not copied on the e-mail. Thus, by itself, the e-mail would be inadmissible hearsay as to what Davenport actually said. The submitted deposition testimony excerpts of both Davenport and Ramsey do not address exactly what was said either. For purposes of this decision, the Court assumes that Ramsey would testify that her e-mail was accurate.

irrelevant. For these reasons, there is no evidence to support the assertion that Davenport factually caused the denial of Plaintiff's request for reemployment. Defendants' motion for summary judgment on the procedural due process claim against Davenport in her personal capacity is thus granted.

Plaintiff's final claim is a workers' compensation retaliation claim against Red Clay. Plaintiff's claim is predicated on 19 Del. C. §2365, which makes it unlawful for an employer to retaliate in any manner against an employee because that employee has filed for workers' compensation. There is no Delaware state case law providing a standard for a §2365 retaliation claim. Both parties suggest that the Court adopt the Title VII legal standard for retaliation to this case. The Court agrees. Thus, in order to establish a *prima facie* case for retaliation, Plaintiff must show evidence that: (1) she exercised rights under the Workers' Compensation Act; (2) Red Clay took an adverse employment action against her, and (3) there was a causal connection between her exercise of rights and the adverse employment action. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006). To prove an adverse act, Plaintiff must prove an action "materially adverse" in that it might dissuade a reasonable worker from making a request for workers' compensation. *Id.* at 341. Causation may be demonstrated through: (1) antagonism or retaliatory animus toward Plaintiff; (2) the temporal proximity between the workers' compensation claim and the adverse employment action; or (3) the record as a whole showing an inference of retaliation. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-81 (3d Cir. 2000). If Plaintiff successfully makes a *prima facie* case, the burden shifts to Red Clay to advance a legitimate, non-retaliatory reason for its action. *Moore*, 461 F.3d at 341. If Red Clay does so, Plaintiff must show that the employer's proffered reason is false and that retaliation was the real reason for the adverse action. *Id.*

Plaintiff argues she has evidence supporting a *prima facie* case for retaliation. It is undisputed that Plaintiff satisfies the first prong of the *prima facie* case test, as she requested workers' compensation benefits, and this is precisely the activity protected by §2365. Plaintiff argues that there are two adverse employment actions here; the initial decision to terminate her and the subsequent decision to deny her reemployment. The Court has already held, however, that there is no evidence that the decision to deny Plaintiff reemployment was a Red Clay decision. It was attributable to OMB. OMB is not a party to the retaliation claim. Thus, only the initial decision to terminate Plaintiff can stand as the adverse action. The Court holds that it suffices for an adverse action, even though Plaintiff resigned before the termination came into effect. Plaintiff only resigned in response to the termination letter, and an adverse action is an act that might dissuade a reasonable worker from making or supporting a charge for workers' compensation. A letter informing an employee of her termination certainly meets that standard, even if that employee preempted the termination via resignation.

This brings the Court to the causation prong. Plaintiff must bring forth facts to show that the termination letter was triggered by her request for workers' compensation. Plaintiff argues that temporal proximity strongly suggests retaliatory motive. Plaintiff filed her initial workers' compensation claims on March 19 and March 21, 2007. Both of these claims were denied. Plaintiff then filed her request for short term disability on April 5, which was denied on July 30, 2007 with a period of time to appeal. On August 2, 2007, Plaintiff apparently either renewed or appealed her denied workers' compensation claims via a petition to the Delaware Industrial Accident Board. Plaintiff received the termination letter seven days later on August 9, 2007. Timing alone may be sufficient to establish a causal link when that temporal proximity is "unusually" or "unduly suggestive." *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir.

2003). Even when that timing is not so close as to be unduly suggestive, timing plus other evidence may suffice for establishing causation. *See id.* Plaintiff argues that because she received her termination letter a mere seven days after filing her petition with the Delaware State Industrial Accident Board, she has established temporal proximity suggesting retaliation. The temporal connection, however, is not as strong as Plaintiff argues. Although the termination letter came only seven days after she filed this petition, the petition was not her first workers' compensation request. Her original claims were filed over four months prior to receipt of the termination letter, and the August filing was simply a continuation of a process already started. This undermines the argument that there is a strong temporal connection giving rise to the inference of causation.

Moreover, there is no "other evidence" that might add to the weight of the temporal proximity. The record reflects that Plaintiff was not terminated due to her filing of workers' compensation, but because Red Clay was under the impression that she failed to return to work after using all of her FMLA leave and the exhaustion of her disability and workers' compensation appeals.[7] Davenport's July 18 letter to Plaintiff provides some foreshadowing. This letter informed Plaintiff that her disability request had been denied and she thus was expected to return to work within five days. (D.I. 76-1 at B64). Although her disability request was not yet actually denied, it made apparent that her job was conditioned on returning to work within a week of the perceived final denial of her disability claim. The claim was actually denied on July 30, 2007 (with time for an appeal) and Plaintiff did not show up to work. Although this was not the final denial, Red Clay interpreted it as such. In that sense, Red Clay was true to its word that Plaintiff would be terminated for failing to show up at work. Plaintiff

---

[7] For the purposes of the retaliation claim, it does not matter whether this impression was correct. All that matters is the reason behind the termination.

14

argues that this termination was improper, because her appeals for disability and workers' compensation were not truly exhausted, and they in fact were later granted. The question for retaliatory causation, however, is not whether Red Clay was operating under a mistake of fact when it scribed the termination letter; the question is whether Red Clay was acting out of a retaliatory intent in response to Plaintiff's request for workers' compensation. Plaintiff argues that Red Clay's mistake evinces antagonism toward her, but Davenport testified that she relied on others for that information. Plaintiff counters that Carpenter has no recollection of providing Davenport with the status of Plaintiff's benefits requests, but a lack of recollection of an event is not equivalent to an affirmative statement that the event did not occur. Plaintiff thus has provided no evidence disputing that Davenport typically relied on others for disability benefits information. Finally, Plaintiff puts forth evidence that Davenport later misrepresented to OMB that she was shocked to learn of Plaintiff's resignation, when in fact Davenport knew that Davenport's resignation was triggered by her termination letter. This statement, however, was made months after Davenport wrote the termination letter and has no bearing on whether that letter was written with retaliatory intent.[8]  Thus, Plaintiff has provided no evidence that Red Clay acted with retaliatory intent in scribing the termination letter, other than a watered-down temporal proximity suggestion. Plaintiff thus fails to establish evidence in support of the causation prong of her *prima facie* retaliation claim. Plaintiff's claim for retaliation fails.[9]

---

[8] If anything, this statement suggests that Davenport attempted to avoid responsibility for her error in Plaintiff's termination letter.

[9] The Plaintiff's state law claim is a poor candidate for the exercise of supplemental jurisdiction under 28 U.S.C. §1367(c). *See Mondzelewski v. Pathmark Stores, Inc.*, 976 F. Supp. 277, 284 (D. Del. 1997) (declining to exercise supplemental jurisdiction after granting summary judgment on federal claim). There is a lack of Delaware case law interpreting §2365, which has resulted in the Court's analyzing the statute under federal laws. It would be better if Delaware courts analyzed it under state law. In addition, while the parties assume that there is a right to a jury trial in a §2365 claim, the Court is not convinced. The only decision the Court is aware of which tangentially addresses this issue is *Pekala v. E.I. DuPont de Nemours and Co., Inc.*, 2006 WL 1067275 (Del. Super. Ct., March 31, 2006), which assumes the jury would decide the issue. The wording of §2365, which gives the Superior Court jurisdiction, discusses the Superior Court's decision as being after "a hearing." It is not obvious that such language is designed

15

For all these reasons, Defendants' motion for summary judgment is granted in its entirety.  An appropriate order will follow.

---

to create a jury triable cause of action. *Cf.* 11 Del. Code §4121(e)(2)e (establishing a "hearing" in a different context in which there is no right to a jury trial).  The issue has not been briefed, and the Court need not decide it.  Thus, there are grounds not to exercise supplemental jurisdiction not only under §1367(c)(3) but also §1367(c)(1).